*Municipal Court of the City of Boston*
No. 3131
HAROLD BRIDGES, P.P.A., ET AL
v.
BOSTON HOUSING AUTHORITY
and

No. 3130
JUNE RYAN, P.P.A., ET AL
v.
BOSTON HOUSING AUTHORITY

(March 18 — May 26, 1960)

*Present:* Adlow, C. J., Riley & Lewiton, JJ.

Case tried to *Glynn, J.,* in the Municipal Court of the City of Boston.

*Riley, J.* These are actions of tort in which the minor plaintiffs seek to recover for bodily injuries sustained on July 5, 1958 when a defective and improper incinerator on the premises of the defendant was caused to explode. The adult plaintiffs seek to recover for consequential damages. The answer is a general denial and contributory negligence in each case. These actions were tried together.

It was agreed that on July 5, 1958 the parents of the minor plaintiffs were tenants of the defendant under written leases each dated June 1, 1957, and that the defendant was in control of the incinerator.

*At the trial there was evidence tending to show the following:*

The minor plaintiff, June Ryan, who was seven years old at the time of the accident, and her parents moved into the defendant's housing project in December, 1953. The minor plaintiff, Harold Bridges, who was eight years old at the time of the accident, and his parents moved into the defendant's housing project in November, 1954. At these times the incinerator was in good condition, and the door of it was all right, and the inside of it was clean. Once or twice a day a man employed by the defendant would push down and burn the rubbish in the incinerator, clean it and put the ashes in barrels in the cellar.

The incinerator was made of brick with a chimney running from the ground to the top floor. The interior of the chimney was about 8 inches by 12 inches. The inside of the fire-box was about 6 feet by 4 feet, and led to an ash pit room about 8 feet below the level of the door of the incinerator. The door of the incinerator opened from the top to about a 45 degree angle with the side of the incinerator, and was secured at the bottom by legs or pins, one on each side. On the inside of the incinerator was a chute, and when rubbish was placed on the chute and the door

was released, it closed automatically. The area between the two units where the plaintiffs lived was used as a play area and clothes yard. The incinerator was located on the end of the building at 34 McNulty Way, adjoining the play area and clothes yard.

About a week and a half before July 5, 1958 the hinge on the left hand side of the bottom of the door was broken so that the door did not close completely, but left an open space of about 6 or 7 inches at the top. About the same time the incinerator was so full of rubbish that the door did not close, but left an open space of about 10 or 12 inches at the top. On or about June 25, 1958, Elizabeth Bridges, the mother of one of the parties to these actions complained to the manager of the defendant's housing project that the incinerator and the platform in front of it were a mess, and that no one had cleaned it all week. The incinerator and platform were cleaned on June 27 and June 30, 1958, but was all piled up again with rubbish by July 2, 1958 and remained the same until July 5, 1958 at 4:00 p.m.

On July 5, 1958 at about 4:00 p.m., Elizabeth Bridges, the mother of one of the parties to these actions went to the incinerator and found it jammed with trash and burned that. When she left the incinerator at about 5:15 p.m., the ashes in the incinerator were above the level of the door so that she was able to get the door only half shut. Some time shortly after that the minor plaintiffs in these actions were walking around the yard near

the incinerator. The plaintiff Harold Bridges saw flames coming out of the top of the chimney and ran over to the incinerator. He climbed up the two steps to the platform and found the door of the incinerator open all the way. He looked into the incinerator, saw what looked like a burned box, and tried to shut the door but was unable to do so. He was just about to jump down from the platform when "a whole bunch of black stuff came out of the incinerator" and hit him in the face. The plaintiff June Ryan was standing on the steps with him and her face was black, also. It felt hot like burning tar. The mother of June Ryan heard an explosion while she was in her apartment on the third floor of the building at 105 Walford Way, ran down stairs and met her daughter at the door of the building and saw burns on her face. Some time later she saw trash and rubbish, some of which was charred and burned, in the area of the incinerator and on the steps leading up to the incinerator.

At the appropriate time the defendant requested the trial judge to rule as follows:

"There is no evidence to warrant a finding that the minor plaintiff sustained injuries as a direct and proximate consequence of the failure of the defendant to use ordinary care to keep the incinerator on its premises in the condition in which it was or appeared to be at the time of the letting of the demised premises to the father of the minor plaintiff. (Mother of plaintiff in case of *Harold Bridges v. Boston Housing Authority*)".

The court denied the defendant's request

for ruling in each case and made the following findings of fact in each case:

"I find from the evidence that the injuries suffered by the plaintiff were the direct and proximate consequence of the negligence of the defendant in failing to use ordinary care in maintaining its incinerator in as good a condition as it was when the plaintiff's parents became tenants of the defendant."

The court found for the plaintiffs.

The sole question presented is contained in the defendant's single request for a ruling of law (in each case)

"that there is no evidence to warrant a finding that the defendant was negligent and that such negligence was the direct and proximate cause of the plaintiffs' injuries."

The report recites that it was agreed that the parents of the minor plaintiffs were tenants of the defendant under written leases dated June 1, 1957 and that the defendant was in control of the incinerator.

This agreement the defendant contends makes the plaintiffs' case fatally defective in that there was no evidence as to the condition of the incinerator on June 1, 1957, the date of the respective written leases.

The contention is not impressive as the report shows that there was evidence as to the condition of the incinerator in December, 1953 at which time the tenancy of the Ryan family commenced, and also evidence as to the condition of the incinerator in November, 1954, the time the tenancy of the Bridges family commenced. The evidence was that at both times the incinerator was in good

condition and the door was all right, and the inside of the incinerator was clean.

In December, 1953, the Ryan family became the tenant and the defendant Boston Housing Authority was the landlord. In November, 1954, the Bridges family became the tenant and the defendant Boston Housing Authority was the landlord. Later, on June 1, 1957, both of these tenants were parties to their respective leases with the defendant, Boston Housing Authority.

There was no change of landlord nor of tenants and therefore the respective tenancies of the Ryans and of the Bridges continued, having commenced in December, 1953 and in November, 1954, the time of letting. These are the essential dates determining the commencement of the tenancies here under discussion, rather than the date of the written leases. *Backoff v. Weiner,* 305 Mass. 375.

"The time of letting" as used in the law of landlord and tenant means when the tenancy began, not the date of a subsequent lease, where the tenant and the landlord are the same on the respective dates. *Backoff v. Weiner,* 305 Mass. 375, is distinguishable from the cases cited by the defendant.

The defendant's other contention is embodied in its request for a ruling of law that there is no evidence to warrant the trial judge to find as a fact that the injuries sustained by the plaintiffs were a direct and proximate consequence of the failure of the defendant to use ordinary care to keep the

incinerator in the condition in which it was, or appeared to be, at the time of the letting, to the parents of the respective plaintiffs.

According to the agreement of the parties cited in the report and previously mentioned, the defendant was in control of the incinerator and the trial judge made his special finding of fact upon the evidence including the agreement.

The evidence in the report, read in its aspect most favorable to the plaintiffs, and if believed by the trial judge who was the sole fact finding body in these cases, was sufficient to warrant both his special findings of fact and his denial of the defendant's requested ruling of law.

The incinerator was in the control of the defendant, and any negligence or neglect by its employee became its negligence. The evidence, if believed, that the fact of the damaged door of the incinerator had been made known to it, and that it remained unrepaired, could likewise be found to be its negligence. The evidence that the incinerator was located between the two units wherein lived the respective plaintiffs' families and in or adjacent to the area used as a play area and clothes yard, coupled with the fact that tenants had access to the incinerator, which became filled up in the absence of the employee, and the contents ignited by one of the tenants; which if believed, was sufficient to warrant the trial judge in believing that both the tenants and the children had a right to be there. Both the failure to repair the

door of the incinerator and the neglect in the maintenance thereof, could be found to constitute the direct and proximate cause of the injuries and damage suffered by the plaintiffs.

The lighting of a fire in the incinerator by the mother of one of the minor plaintiffs shortly before the accident could have been found to be either incidental to the defendant permitting an accumulation of rubbish to exist, or to have been an independent intervening cause.

The trial judge apparently found the lighting of the fire to be only incidental to the neglect of allowing the rubbish to accumulate in an incinerator having a door not in working order.

The determination of cause, either proximate or remote, is a question of fact to be determined by the trial judge.

It is well settled that "where, as here the original negligence of the defendant is followed by the independent act of a third person which directly results in injurious consequences to the plaintiff, the defendant's earlier negligence may be found to be the direct and proximate cause of those injurious consequences, if according to human experi- of events the defendant ought to have seen that the intervening act was likely to happen." ence and in the natural and ordinary course *Horan v. Watertown*, 217 Mass. 185, 186.

Both acts of negligence could have the combined effect of causing the accident, but the trial judge still had the power to

determine the proximate cause. *Burke v. Hodge,* 217 Mass. 182, 184 and 185, and the slight remoteness of the defendant's negligence is not enough to exonerate it from liability, *McDonald v. Snelling,* 14 Allen 290, 299, the original negligence still remaining a culpable and direct cause of the injuries. *Lane v. Atlantic Works,* 111 Mass. 136, 139, 140.

The trial judge has found that it was the negligence of the defendant that injured the plaintiffs, and we believe the evidence warranted such a finding.

It is not our function to weigh the evidence, or to substitute our opinion for his. *Wallace v. Ludwig,* 292 Mass. 251, 259.

There is no error of law.

*Report dismissed.*

Lewiton, J. dissenting:

While the law is clear that the condition of the premises at "the time of letting" is one of the decisive elements in a case of this character, I am not satisfied from the facts stated in the report that the "time of letting" in each of these cases was the date on which the parents of each plaintiff first became tenants of the defendant in 1953 and 1954, respectively.

I believe it to be the general rule that when a tenant occupying premises under a rental arrangement continues to occupy the premises under a new lease executed between him and the landlord, a new tenancy is created as of the effective date of the new lease. *Watriss v. National Bank of Cambridge,* 124 Mass. 471,

576. According to the report, it was agreed that at the time of the injury to the plaintiffs, their parents were tenants of the defendant under written leases, each dated June 1, 1957. Applying the aforementioned general rule to these facts, it would appear that a new tenancy commenced in each instance on June 1, 1957 and that the condition of the premises on that date was the vital standard against which the care or lack of care of the defendant was to be measured. However, it has been held by the Supreme Judicial Court that it "would be unreasonable to hold that every trifling alteration in the premises demised or in the relations of the parties necessarily has the effect of an entirely new tenancy upon the standard of maintenance of all the appurtenances in the landlord's control and throws upon the tenant the burden of reexamining all of them or taking upon himself the consequences of the landlord's then unfulfilled obligations." *Chapman v. Standen,* 302 Mass. 4, 6. Since we are unable to determine from the report whether the leases executed by the defendant with the parents of the plaintiffs on June 1, 1957 made any alterations in the preexisting relations of the parties, and if so, whether such changes were trifling or substantial, I would vacate the finding for the plaintiff and order a new trial, so that evidence might be offered on this question, as well as on other issues involved.

Robert P. Malone and Nathan Greenberg both of Boston, for the Plaintiff.

Charles W. O'Brien of Boston, for the Defendant contended: That the time of the letting as used in the law of landlord and tenant means the time when the tenancy began. *Sordillo v. Fradkin*, 282 Mass. 255; that a conveyance of realty terminates tenancy at will and the condition of the premises at the time of the creation of a new tenancy with the grantee is the condition that governs the responsibility of the landlord. *Fenno v. Roberts*, 327 Mass. 305; *Stedfast v. Rebon Realty*, 333 Mass. 348; *Auld v. Jordan*, 340 Mass. 228 and that the execution of a written lease between the parties creates the tenancy, and the obligations of the parties begin as of the effective date of the lease. *Luoma v. Socony-Vacuum Oil Co., Inc.*, 332 Mass. 101.